Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ROBERTO OSCAR RÍOS VARGAS, VERÓNICA CARLO SÁNCHEZ<br><br>Apelados<br><br>v.<br><br>ELVIN ROBLES COLÓN<br><br>Apelante | TA2026AP00072 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo<br><br>Caso Núm.: CB2024CV00291<br><br>Sobre:  Cobro de Dinero |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de mayo de 2026.

Comparece ante nos el señor Elvin Robles Colón ("señor Robles Colón" o "Apelante") mediante *Petición de Apelación Civil* presentada el 20 de enero de 2026. Nos solicita la revocación de la *Sentencia* notificada el 27 de octubre de 2026 por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria* radicada por el señor Roberto Oscar Ríos Vargas y la señora Verónica Carlo Sánchez ("Parte Apelada", conjuntamente). En consecuencia, ordenó al Apelante a pagar la suma adeudada de cincuenta mil dólares ($50,000.00), a favor de los Apelados, por el incumplimiento de la obligación pactada en el *Pagaré* suscrito el 7 de marzo de 2022.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen impugnado.

## I.

El 15 de mayo de 2024, el señor Ríos Vargas y la señora Carlo Sánchez instaron *Demanda* contra el señor Robles Colón sobre cobro de dinero.[1] En síntesis, detallaron que las partes celebraron *Contrato de Compraventa de Bienes Muebles* el 9 de abril de 2022 por la cantidad de cincuenta mil dólares ($50.000.00). De acuerdo con sus alegaciones, los bienes muebles consistían en equipo, mobiliario, maquinaria e inventario para la operación del Hotel Mi Tierra. Según expusieron en su escrito, el señor Robles Colón suscribió *Pagaré*[2] para garantizar el cumplimiento de la obligación surgida tras la celebración de la compraventa. A la luz de lo anterior, los Apelados indicaron que el Apelante no ha cumplido con el pago acordado, por lo que, argumentaron que la suma adeudada es líquida, vencida y exigible por la vía judicial. Por todo lo cual, solicitaron el correspondiente pago con sus respectivos intereses en concepto de la cantidad adeudada, según pactados, más la imposición de honorarios de abogado y costas.

Con posterioridad, el 10 de julio de 2024, la Parte Apelada presentó *Moción Solicitando Anotación de Rebeldía.*[3] Arguyó que, a la fecha del 27 de junio de 2024, el señor Robles Colón no había presentado alegación responsiva o solicitud de prórroga a tales efectos. Por lo anterior, requirió la anotación de rebeldía contra el Apelante y que se dictara *Sentencia* conforme a las alegaciones expuestas en la *Demanda.*

En igual fecha, el foro primario emitió *Resolución*, en la cual declaró *Con Lugar* el petitorio del señor Ríos Vargas, por tanto, anotó la rebeldía al señor Robles Colón.[4]

---

[1] *Véase*, SUMAC TPI, Entrada 1.
[2] *Véase*, SUMAC TPI, Entrada 1, Anejo 2, *Pagaré*, págs. 1-2.
[3] *Véase,* SUMAC TPI, Entrada 10.
[4] *Véase,* SUMAC TPI, Entrada 11.

Luego, el 14 de julio de 2024, el señor Ríos Vargas sometió *Moción Solicitando Enmienda a la Demanda*, a la cual adjuntó un escrito que contiene las mismas alegaciones y súplicas esbozadas en la *Demanda* original.[5] En esencia, reconoció que incluyó a la señora Carlo Sánchez en la reclamación, sin embargo, informó que no contó su autorización a tales efectos. Por ende, peticionó al foro *a quo* que le permitiera radicar nuevamente la *Demanda* para precisar que el señor Ríos Vargas es el único demandante.

Tras revisar su solicitud, el foro primario dictó *Orden,* mediante la cual permitió que se enmendara la *Demanda,* y, en consecuencia, ordenó que Secretaría eliminase el nombre de la señora Carlo Sánchez del epígrafe del caso.[6]

Posteriormente, el 28 de agosto de 2024, el Apelante incoó *Moción en Solicitud de Levantamiento de Anotación de Rebeldía.*[7] Entre otros extremos, argumentó que la reclamación debía ser dilucidada mediante la vía ordinaria por motivos de la cuantía reclamada. A su vez, arguyó que el foro primario debía resolver si los Apelados comparecieron a la celebración del *Contrato de Compraventa de Bienes Muebles* en su carácter personal o en representación de Rios Carlo Enterprises Corp. Finalmente, solicitó que se levantara la anotación de rebeldía en su contra.

Evaluada la petición que antecede, el 18 de septiembre de 2024, el foro *a quo* emitió *Resolución y Orden,* en la cual dejó sin efecto la anotación de rebeldía en contra del Apelante porque no habían transcurridos los treinta (30) días para presentar la correspondiente alegación responsiva, contados a partir de la presentación de la *Demanda Enmendada.*[8]. Asimismo, autorizó que el procedimiento judicial se ventilara por la vía ordinaria.

---

[5] *Véase*, SUMAC TPI, Entrada 8, Anejo I, *Demanda Enmendada*, págs. 1-2.
[6] *Véase,* SUMAC TPI, Entrada 9.
[7] *Véase,* SUMAC TPI, Entrada 16.
[8] *Véase,* SUMAC TPI, Entrada 21.

Luego de varios trámites procesales, el 1 de noviembre de 2024, el Apelante presentó *Contestación a Demanda Enmendada*.[9] En esta, aseveró que el *Pagaré* está fechado el 7 de marzo de 2022. No obstante, precisó que los bienes muebles adquiridos en virtud del referido *Pagaré*, pertenecen a Rios Carlo Enterprise Inc., entidad corporativa adquirida por el señor Robles Colón. Por ende, sostuvo que tales bienes no pertenecen a la Parte Apelada.

Así las cosas, el 17 de diciembre de 2024, la señora Carlo Sánchez radicó *Solicitud de Intervención*, debido a que indicó que también es acreedora de la deuda reclamada.[10] Alegó que en múltiples ocasiones recibió promesas de pago por parte del Apelante. Sin embargo, precisó que no se suscribió acuerdo transaccional al respecto, por lo que, sostuvo que la deuda es líquida, vencida y exigible.

En cuanto a la aludida solicitud, el 19 de agosto de 2025, el foro primario celebró *Vista de Conferencia Inicial*, mediante la cual permitió la intervención de la señora Carlo Sánchez, según consta en la *Minuta* notificada el 27 de agosto de 2025.[11] Por otro lado, durante dicho proceso, otorgó un término de veinte (20) días para que las partes presentaran las mociones dispositivas correspondientes. De igual modo, señaló una vista de estado de los procedimientos para el 4 de noviembre de 2025.

De conformidad con lo ordenado, el 1 de septiembre de 2025, el señor Ríos Vargas sometió *Moción de Sentencia Sumaria*, a la cual adjuntó la documentación de la compraventa de bienes muebles y el *Pagaré*.[12] En este escrito, recalcó que las partes otorgaron un contrato de compraventa de bienes muebles ubicados en el Hotel Mi Tierra, por la cantidad de cincuenta mil dólares ($50,000.00). A esos

---

[9] *Véase,* SUMAC TPI, Entrada 27.
[10] *Véase,* SUMAC TPI, Entrada 32.
[11] *Véase,* SUMAC TPI, Entrada 49.
[12] *Véase,* SUMAC TPI, Entrada 50.

efectos, indicó que se otorgó un *Pagaré* con intereses de tres punto cinco por ciento (3.5%). Agregó que la deuda está vencida, por tanto, es líquida y exigible. Adujo que, a la luz de lo pactado, los tenedores del pagaré tienen la opción de recuperar los bienes muebles objetos de la deuda, a los fines de generar ingresos para saldar la misma. También, puntualizó que se acordó el pago del diez por ciento (10%) del monto adeudado, en concepto de costas, gastos y honorarios de abogado.

Por su parte, el 8 de septiembre de 2025, el señor Robles Colón presentó *Moción en Solicitud de Sentencia Sumaria*, a la cual adjuntó la siguiente documentación: (1) tasación del Hotel Mi Tierra, (2) *Contrato de Compraventa de Acciones de Rios Carlo Enterprise Corp.*, (3) *Pagaré*, (4) y *Compraventa de Bienes Muebles*.[13] En esencia, sostuvo que Rios Carlo Enterprises Corp. era la entidad propietaria en pleno dominio de los activos y pasivos del Hotel Mi Tierra y otros locales ubicados en el mismo predio.[14] Afirmó que, por virtud del contrato, el señor Ríos Vargas y la señora Carlo Sánchez le cedieron a la Parte Apelante el cien por ciento (100%) de las acciones corporativas y todos sus activos por la cantidad de ochocientos mil dólares ($800,000.00). Adujo que, según la *Resolución Corporativa*, los Apelados estaban autorizados únicamente a comparecer en calidad representativa de la aludida corporación. En cuanto al *Pagaré,* indicó que se otorgó mediante dolo, engaño y mala fe, atribuibles a la Parte Apelada. En vista de lo anterior, señaló que no existen hechos esenciales en controversia sobre este asunto, por lo que, solicitó que se dictara sentencia sumaria a su favor, y en efecto, se desestimara la causa de acción incoada en su contra.

---

[13] *Véase*, SUMAC TPI, Entrada 52, Anejos 1-5.
[14] *Véase*, SUMAC TPI, Entrada 52.

Al día siguiente, la señora Carlo Sánchez presentó escrito intitulado *Solicitud de Sentencia Sumaria*.[15] En síntesis, señaló que el señor Robles Colón no cumplió con los requisitos impuestos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, sobre la solicitud de sentencia sumaria.

Respecto a la petición radicada por el señor Ríos Vargas, el 22 de septiembre de 2025, el señor Robles Colón sometió *Moción en Oposición a Solicitud de Sentencia Sumaria de 1 de septiembre de 2025*.[16] Mediante este escrito, reiteró que los Apelados no eran los verdaderos propietarios de los bienes muebles objeto del pagaré. En esa línea, puntualizó que compró las acciones a la corporación Rios Carlo Enterprises Corp. Ello, pues, sostuvo que estos carecían de capacidad jurídica para celebrar tales contratos en su carácter personal, de acuerdo con los actos autorizados en la *Resolución Corporativa*.

Examinadas las posturas de las partes, el 22 de octubre de 2025, el foro primario emitió *Sentencia* notificada el 27 de octubre de 2025.[17] En virtud de este dictamen, concluyó que la Parte Apelante no demostró que existía controversia sobre hechos materiales esenciales. En consecuencia, declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por el señor Ríos Vargas, y formuló las siguientes determinaciones de hechos:

1. El día 9 de abril de 2022, los demandantes Roberto Oscar Ríos Vargas[,] Verónica Carlo Sánchez y el demandado Elvin Robles Colón suscribieron en Cabo Rojo, Puerto Rico un Contrato de Compraventa de Bienes Muebles, por la cantidad de $50,000.00. Exhibit 1.

2. En su contestación a la demanda del hecho expositivo 3, dicha parte acepta que en efecto otorgaron un contrato de Compraventa en la fecha indicada en el expositivo.

---

[15] Conviene precisar que, a pesar de que su escrito se intitula M*oción de Sentencia Sumaria*, en sí constituye una oposición a la solicitud de sentencia sumaria radicada por el señor Robles Colón. *Véase,* SUMAC TPI, Entrada 53. Igualmente, puntualizamos que, surge del expediente que, el 3 de octubre de 2025, el señor Ríos Vargas presentó *Moción en Cumplimiento de Orden,* mediante la cual se unió al escrito en oposición radicado por la señora Carlo Sánchez. *Véase,* SUMAC TPI, Entrada 58.
[16] *Véase,* SUMAC TPI, Entrada 56.
[17] *Véase,* SUMAC TPI, Entrada 60.

3. Para garantizar el pago de los bienes muebles comprados, el demandado suscribió un Pagaré por la cantidad de $50,000.00, con vencimiento a 2 años, contados a partir de la fecha del contrato, o sea, desde el 9 de abril de 2022; hecho aceptado por la parte demandada en su Contestación a la Demanda número 5 y citamos: "Se acepta que las partes otorgaron un documento titulado Pagaré y los términos de este expuestos".

4. Los bienes muebles, equipo mobiliario[,] maquinaria, e inventario objeto del contrato de compraventa, ubican en el Hotel Mi Tierra, localizado en la Carretera 102, Km. 16.4 Sector Joyuda, Cabo Rojo, Puerto Rico[.]

5. La deuda genera intereses al 3.5%, para el caso de que la deuda no fuera tasada en su totalidad en o antes de la fecha de vencimiento acordada. La tasa de interés de la deuda está incluida en el pagaré suscrito por la parte demandada.

6. El contrato establece que los tenedores del pagaré tienen la opción de recuperar los bienes muebles objeto de la deuda, a fin de disponer de los mismos y generar los ingresos para el saldo de la deuda.

7. El demandado acordó, además, el pago de un 10% del monto adeudado para el pago de las costas, gastos y honorarios de abogado, en caso de una acción judicial.

8. La parte demandada, es mayor de edad, no se encuentra incapacitado, no es una persona indigente, no se encuentra sirviendo en las fuerzas armadas de los Estados Unidos de América y la dirección informada en la demanda, es la última dirección conocida del demandado.

9. La deuda está vencida y es líquida y exigible.

10. A la fecha en que se radica la demanda, ya había transcurrido el término acordado por los demandantes con el demandado para dar cumplimiento al Contrato de Compraventa y el Pago de Deuda representada por el Pagaré suscrito por el demandado.[18]

En desacuerdo, el 12 de noviembre de 2025, el Apelante presentó *Moción en Solicitud de Reconsideración de Sentencia.*[19] Insistió en que existen hechos materiales que están en controversia, relacionados con la credibilidad de los negocios jurídicos celebrados, y respecto a la comparecencia de la Parte Apelada en su carácter personal. Por último, recalcó que presentó una *Moción de Sentencia Sumaria,* sin embargo, no fue considerada por el foro primario.

Posteriormente, el 14 de noviembre de 2025, el señor Ríos Vargas presentó *Réplica a Moción de Reconsideración,* en la que se limitó a indicar que la *Sentencia* dictada es conforme a derecho.[20]

---

[18] *Véase,* SUMAC TPI, Entrada 60, págs. 3-4.
[19] *Véase,* SUMAC TPI, Entrada 61.
[20] *Véase,* SUMAC TPI, Entrada 63.

De manera similar, el 15 de diciembre de 2025, la señora Carlo Sánchez presentó una *Oposición a Solicitud de Reconsideración.*[21] Arguyó que el Apelante no estableció la existencia de una controversia *bona fide* sobre los hechos sustanciales que ameriten la celebración de una vista en su fondo.

Tras examinar su escrito, el 18 de diciembre de 2025, el foro primario notificó *Resolución Interlocutoria,* en la que declaró *No Ha Lugar* la solicitud de reconsideración presentada por el Apelante.[22]

Inconforme, el 20 de enero de 2026, el señor Robles Colón acudió ante este Tribunal de Apelaciones, mediante la presentación del recurso de epígrafe, en el cual esbozó el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE CABO ROJO, AL DECLARAR "HA LUGAR" LA MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA EXISTIENDO CONTROVERSIAS REALES Y MATERIALES DE HECHO Y DERECHO FEHACIENTES LAS CUALES AMERITAN DETERMINACIONES DE CREDIBILIDAD E INTE[N]CIÓN PRIVANDO ASÍ A LA PARTE DEMANDADA DE SU DÍA EN CORTE.

Sometido su recurso, el 29 de enero de 2026, esta Curia emitió *Resolución* en la cual concedió a la Parte Apelada el término a vencer el 19 de febrero de 2026 para radicar su escrito en oposición.

Vencido dicho término sin que los Apelados presentaran su posición, procedemos a resolver la controversia sin el beneficio de su comparecencia.

## II.
### A. Sentencia Sumaria

Nuestro esquema procesal contempla el mecanismo de sentencia sumaria que permite la ágil disposición de casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR

---

[21] *Véase,* SUMAC TPI, Entrada 69.
[22] *Véase,* SUMAC TPI, Entrada 70.

964, 979 (2022). Véanse, también, *Conklin v. Passalacqua,* 2026 TSPR 18; 217 DPR ___ (2026); *Soto y otros v. Sky Caterers*, 2025 TSPR 3, 215 DPR___ (2025). Su propósito es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Solo procede su concesión cuando surge que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012). Ello, pues, constituye un remedio discrecional, toda vez que "solo procede dictar sentencia sumaria cuando surge de manera clara que el promovido por la solicitud no prevalecerá bajo ningún supuesto de hechos." *Conklin v. Passalacqua, supra; Nieves Díaz v. González Massas,* 178 DPR 820, 848 (2010).

A esos fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En esa dirección, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Oriental Bank v. Caballero García, supra*, pág. 679.

A tales efectos, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, prescribe los requisitos de forma atinentes a esta moción y su respectiva oposición. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). Particularmente, el inciso (a) de la aludida

disposición reglamentaria fija las formalidades que debe exhibir una petición de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a).

Por su parte, quien presente oposición a la sentencia sumaria tiene que cumplir con los requisitos de los incisos (b) y (c) de la Regla 36.3 de Procedimiento Civil, *supra*. Véase, también, *Oriental Bank v. Caballero García, supra*, pág. 680. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". *Íd*. Al contrario, le compete, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020).

Por tanto, el oponente a la vía sumaria enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Oriental Bank v. Caballero García, supra.*, pág. 680. También, indicará los párrafos o las páginas de la prueba documental que establezcan o impugnen cada hecho. *Íd.* A su vez, identificará "los argumentos del derecho aplicable por los cuales no

se debe dictar la sentencia*". SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 336. Ahora bien, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que tal moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351. En efecto, "este análisis se debe guiar por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria". *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 809 (2020).

Acatados los requisitos procesales discutidos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión,* 178 DPR 200, 210 (2010); *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, estos deben analizarse de la forma más favorable para la parte promovida, concediéndole así el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

Efectuado este análisis, el foro primario podrá emitir la sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, según fueran ofrecidas, surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto derecho. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351. No obstante, no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de

los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp., et als.*, 2025 TSPR 6, 215 DPR ___ (2025); *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

Tampoco procederá, como norma general, el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. Int'l Shipping et al., supra,* pág. 980; *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994). Sobre este particular, nuestro Máximo Foro ha establecido la siguiente normativa:

> *[N]o es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa. Soto v. Hotel Caribe Hilton, 137 DPR 294 (1994). Sin embargo, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención —como pasa en un caso de discrimen— cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión, supra,* pág. 219.

**Ahora bien, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria".** *Birriel Colón v. Econo y otro, supra,* pág. 91; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337. (Énfasis nuestro).

Por último, una parte inconforme respecto a la adjudicación de una moción de sentencia sumaria tiene derecho a recurrir a nivel apelativo. En tales circunstancias, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros, supra,* pág. 994; *Birriel Colón v. Econo y otro, supra,* pág. 91. Por lo que, debemos efectuar un análisis a tenor con las siguientes consideraciones:

**(1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;**

**(2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;**

**(3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.**

**(4) y de encontrar que los hechos materiales realmente están incontrovertidos debe revisar *de novo,* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia**. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018). (Énfasis nuestro).

De acuerdo con interpretación jurisprudencial, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015). En virtud de este ejercicio, "es indispensable analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos". *Conklin v. Passalacqua, supra*; *Rosado Reyes v. Global Healthcare, supra*, pag. 809. No obstante, no tenemos facultad para adjudicar hechos materiales en disputa, pues esa tarea corresponde al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, págs. 114-115. Por consiguiente, estamos limitados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas en las Reglas de Procedimiento Civil. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 352; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 338, (citando a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020)).

### B. Obligaciones de naturaleza contractual

En nuestro ordenamiento jurídico, los contratos constituyen fuentes de obligación a tenor con el Artículo 1063 del Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 8984, según enmendada

("Código Civil" o "Ley Núm. 55-2020"). El Artículo 1230 del Código Civil, *supra,* define el contrato de la siguiente manera:

> **El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones**. 31 LPRA sec. 9751. (Énfasis nuestro).

A la luz de tales fundamentos, el Artículo 1237 de la Ley Núm. 55-2020, *supra,* preceptúa que "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa". 31 LPRA sec. 9757. Así pues, un contrato se considera válido si concurren los siguientes elementos, a saber: (1) el consentimiento de los contratantes, (2) el objeto cierto y (3) la causa de la obligación. *Aponte Valentín et al. v. Pfizer Pharm.,* 208 DPR 263, 284 (2021). Una vez la parte presta su consentimiento sobre el objeto y la causa, ésta queda sujeta al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes". Artículo 1233, Código Civil (2020), *supra*, 31 LPRA sec. 9754.

Respecto a la interpretación del negocio jurídico bilateral, el Artículo 354 del Código Civil (2020), *supra,* dispone las siguientes reglas:

> (a) se presume que el negocio jurídico se otorga de buena fe; y
>
> (b) si el negocio jurídico es unilateral, se atenderá al sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad de su autor. En tal caso, se observará lo que parezca más conforme a la intención que tuvo al otorgarlo. Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
>
> Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aún anterior al otorgamiento del negocio jurídico. 31 LPRA sec. 6342.

Sobre este aspecto, el Tribunal Supremo de Puerto Rico ha reiterado la siguiente normativa concerniente a la interpretación contractual:

> **[C]uando los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación, por lo que se está al sentido literal de las cláusulas pactadas. Es decir, se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes.**
>
> **No empece lo anterior, en ocasiones no es posible determinar la voluntad de las partes con la mera lectura literal de las cláusulas contractuales. Cuando esto ocurre, es necesario juzgar la intención de los contratantes a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes.** *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 995-996 (2024); *Negrón Vélez v. ACT,* 196 DPR 489, 506-507 (2016); *Blás v. Hospital Guadalupe,* 167 DPR 439, 451 (2006)*; S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 726 (2001). (Énfasis nuestro).

De conformidad con lo expuesto, los términos de un contrato son claros cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009). Por tanto, de existir tales circunstancias, "se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes". *Cruz, López v. Casa Bella y otros, supra,* pág. 995; *S.L.G. Irizarry v. S.L.G. García, supra,* pág. 726.

En ausencia de ambigüedad, las cláusulas del contrato son obligatorias, pues no se admitirá interpretación que vulnere el claro propósito y la voluntad de las partes. *S.L.G. Francis-Acevedo v. SIMED, supra,* pág. 387. Así pues, en tales contextos debemos presuponer la lealtad, corrección y buena fe en la redacción contractual, según se explica a continuación:

> *[A]l momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas. Dicho en otras palabras, no se puede buscar oscuridad ni tergiversar la interpretación de los contratos para llegar a resultados absurdos o injustos.* *S.L.G. Irizarry v. S.L.G. García, supra,* pág. 726. (Énfasis nuestro).

### C. Acción legal sobre cobro de dinero

En una acción de cobro de dinero, la parte demandante tiene que demostrar ser la acreedora de una deuda vencida, líquida y exigible. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108-109 (2021); Véase, también, *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001). A tales efectos, a la parte reclamante le corresponde probar que: (1) existe una deuda válida, (2) que la misma no se ha pagado, (3) que él es el acreedor y los demandados sus deudores. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43-44 (1986). Véase, también, *RMCA v. Mayol Bianchi, supra*, pág. 107. No obstante, conviene explicar que, solo la **deuda vencida, líquida y exigible** es reclamable por la vía judicial, según lo ha establecido el Tribunal Supremo de Puerto Rico:

> **La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, al alegarse que la cuenta es líquida y exigible se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencida**. *RMCA v. Mayol Bianchi, supra*, pág. 108-109; *Ramos y Otros v. Colón y Otros, supra*, pág. 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). (Énfasis nuestro).

### III.

En el recurso de epígrafe, el señor Robles Colón argumenta que la Parte Apelada no ostentaba la facultad en su carácter personal para celebrar los negocios jurídicos concernientes a la venta de los bienes muebles corporativos y al *Pagaré,* los cuales fueron suscritos mediante dolo y engaño, de acuerdo con sus alegaciones.[23] En esa línea, indica que los Apelados únicamente estaban autorizados a actuar en calidad representativa de Rios Carlo Enterprises Corp. En vista de lo anterior, nos solicita la revocación del dictamen impugnado por considerar que existen hechos materiales en controversia que impiden acoger la vía sumaria.

---

[23] *Véase*, SUMAC TA, Entrada 1, *Petición de Apelación Civil*, pág. 18.

Como cuestión principal, establecemos que nos encontramos en igual posición que el foro *a quo* para revisar de *novo* el expediente, y evaluar si la petición de sentencia sumaria y su oposición se presentaron de conformidad con los criterios procesales. Véanse, *Cruz, López v. Casa Bella y otros, supra*, pág. 994; *Birriel Colón v. Econo y otro, supra,* pág. 91 Tras examinar ambos escritos a la luz de la prueba sometida, resolvemos que estos exhiben íntegramente las formalidades que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.*

Atendido lo anterior, nos compete resolver, en segundo lugar, si existen hechos esenciales en controversia que impidan dictar sentencia sumaria. Adelantamos que no identificamos hechos materiales en controversia que imposibiliten acoger dicho mecanismo procesal. Asimismo, anticipamos que los Apelantes demostraron correctamente que el señor Robles Colón adeuda la cantidad de cincuenta mil dólares ($50,000.00), en concepto del *Pagaré* suscrito el 7 de marzo de 2022. Con esto en mente, pasemos a resolver la controversia en sus méritos.

A tales efectos, expondremos una relación fáctica detallada concerniente a los negocios jurídicos celebrados por ambas partes, en aras de facilitar la cabal comprensión de los hechos ante nuestra atención. En virtud de ello, nos aseguraremos de proveer un contexto claro respecto al *Pagaré,* objeto del litigio. Así también, procuraremos interpretar de modo correcto la voluntad de los contratantes para alcanzar una solución justa fundamentada en el derecho civil y en el principio de buena fe imperante en nuestro ordenamiento jurídico. Véase, *S.L.G. Irizarry v. S.L.G. García, supra,* pág. 726.

Surge del expediente ante nos que, **el 4 de abril de 2022**, el señor Ríos Vargas, quien era el secretario y tesorero de Rios Carlo Enterprise, suscribió la **Resolución Corporativa Rios Carlo**

***Enterprises Corp***. cuyo contenido recoge el acuerdo alcanzado por los entonces miembros de dicha corporación.[24] En lo pertinente al caso de marras, la *Resolución* aludida facultó al señor Ríos Vargas y a la entonces presidenta de dicha corporación, la señora Carlo Sánchez, a celebrar el contrato de compraventa de acciones con el señor Robles Colón, según se esboza a continuación:

> a. Que Rios Carlo Enterprise, Corp. tiene dos miembros y accionistas cuyos nombres y circunstancias son las siguientes:
>
>> a. Roberto Oscar Ríos Vargas, mayor de edad, soltero, comerciante y secretario y tesorero de Rios Carlo Enterprise, Corp., y vecino de Cabo Rojo, Puerto Rico.
>>
>> b. Verónica Carlo Sánchez, mayor de edad, soltera, comerciante, y presidenta de Rios Carlo Enterprise, Corp., y vecina de Cabo Rojo, Puerto Rico.
>
> **b. Que los miembros antes mencionados son los únicos accionistas, en participaciones del cincuenta por ciento (50%) cada uno, del cien por ciento (100%) de las acciones comunes de capital de dicha corporación, cuya totalidad sea [sic] autoriza sean vendidas a Elvin Robles Colón. Las acciones se describen como diez mil (10,000) acciones comunes por un valor par de diez dólares ($10.0) cada una.**
>
> **c. Que se autoriza a Verónica Carlo Sánchez y a Roberto Oscar Ríos Vargas a comparecer, en nombre y representación de la Corporación, en la compraventa de los activos acciones de capital de Rios Carlo Enterprises, Corp., a favor de Elvin Robles Colón**.[25] (Énfasis nuestro y citas omitidas).

Además, la *Resolución* dispone que, si el señor Ríos Vargas está imposibilitado de comparecer a la celebración de dicho negocio jurídico, se permitirá que el señor Roberto Serrano Marrero ("señor Serrano Marrero") comparezca en su representación:

> **d. Que en el caso de imposibilidad de Roberto Oscar Ríos Vargas para comparecer a la compraventa de su participación en las acciones del cincuenta por ciento (50%) de Rios Carlo Enterprises, Corp. a Elvin Robles**

---

[24] Para viabilizar la celebración de estos actos, el estado de derecho vigente contempla la delegación de facultades representativas en virtud del otorgamiento de una resolución corporativa. Respecto a este extremo, el Tribunal Supremo ha reconocido la siguiente normativa:

> En lo que nos concierne, en aquellos casos en los que la autoridad de un oficial de la corporación ha sido conferida expresamente por una resolución corporativa, es necesario que dicha resolución describa adecuadamente las facultades específicas concedidas y los actos autorizados, además de las circunstancias personales que posibiliten la identificación adecuada del representante. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *PR v. Registrador*, 155 DPR 652, 666 (2001).

[25] *Véase*, SUMAC TPI, Entrada 52, Anejo III, *Resolución Corporativa Rios Carlo Enterprises, Corp.,* págs. 1.

> **Colón se autoriza a que comparezca a su nombre y representación el Sr. Roberto Serrano Rivera, mayor de edad, comerciante, casado y vecino de Sabana Grande, Puerto Rico. Esto se hace tomando en consideración el tratamiento médico del Sr. Roberto Oscar Ríos Vargas, y la posibilidad de que tenga que viajar fuera de Puerto Rico de emergencia por su situación de salud**. (Énfasis nuestro y citas omitidas).[26]

A la luz de las facultades delegadas, **el 9 de abril de 2022,** el señor Ríos Vargas, por conducto del señor Serrano Rivera, y la señora Carlo Sánchez, en representación de la corporación mencionada, otorgaron ***Contrato de Compraventa de Acciones Corporativas de Rios Carlo Enterprise Corp***. a favor del señor Robles Colón. En cuanto a este particular, obra en el expediente ante nos el documento contractual aludido, en el que se acredita la comparecencia de ambas partes, de la siguiente manera:

> ---**DE LA PRIMERA PARTE: Elvin Robles Colón, mayor de edad, casado con María Julia Santaella Rodríguez mediante régimen de separación total de bienes conforme escritura número cuatro (4), otorgada en Villalba Puerto Rico el 23 de abril de 2022 ante el Notario Público Liudmila Ortiz Marrero, escritura que se tuvo ante mí, fue evaluada y la misma cumple con todos los requisitos y solemnidades legales para este otorgamiento, se encuentra en pleno efecto y vigor acreditando así la vigencia de las mismas, empresario y vecino de Ponce, Puerto Rico; en adelante denominado LA PARTE COMPRADORA.**-----------------------------------------
>
> ---**DE LA SEGUNDA PARTE: Verónica Carlo Sánchez y Roberto Oscar Ríos Vargas, ambos mayores de edad, soleteros, empresarios y vecinos de Cabo Rojo, Puerto Rico. Roberto Oscar Ríos Vargas comparece representado por Roberto Serrano Rivera, en virtud de Resolución Corporativa Rios Carlo Enterprise Corp., testimonio número dos mil cuatrocientos veintiocho (2428), otorgada en la ciudad de Hormigueros, Puerto Rico, a los cuatro (4) días del mes de abril del año dos mil veintidós (2022), ante el notario fedante, por el Secretario de Rios Carlo Enterprise Corp. Roberto Oscar Ríos Vargas<u>, doy fe de que la Resolución corporativa se tuvo ante mí, fue evaluada y la misma cumple con todos los requisitos y solemnidades legales pare este otorgamiento, se encuentra en pleno efecto y vigor acreditando así la capacidad representativa conforme a la Ley, el descrito documento autoriza también la comparecencia de ambos vendedores al presente acto, en adelante denominados como LOS VENDEDORES</u>**. (Énfasis nuestro y citas omitidas).[27]

---

[26] *Véase*, SUMAC TPI, Entrada 52, Anejo III, *Resolución Corporativa Rios Carlo Enterprises, Corp.*, págs. 1-2.

[27] *Véase*, SUMAC TPI, Entrada 52, Anejo II, *Contrato de Compraventa de Acciones Corporativas de Rios Carlo Enterprise Corp.*, págs. 1-13.

Igualmente, el referido contrato constata que, en aquel momento **los vendedores eran los dueños en pleno dominio** de las acciones corporativas, según se detalla a continuación:

> ---PRIMERO: Que LOS VENDEDORES son dueños en pleno dominio y común proindiviso, en participaciones del cincuenta por ciento causa uno para completar el cien por ciento (100%) de las acciones de capital de la corporación RIOS-CARLO ENTERPRISE CORP. (en adelante denominada como RIOS-CARLO); una corporación creada y operando al amparo de las leyes del Estado Libre Asociado de Puerto Rico, registrada en la División de Corporaciones del Departamento de Estado de Puerto Rico bajo el certificado de incorporación número 368407 registrada el 10 de febrero de 2016 a la 1:37 p.m.
>
> **---SEGUNDO: Que RIOS-CARLO es una corporación con fines de lucro dedicada a toda actividad comercial legítima. En la actualidad opera el Hotel Mi Tierra**. ----- (Énfasis nuestro y citas omitidas).[28]

En virtud de este arreglo contractual, la Parte Apelada vendió al señor Robles Colón todas sus acciones corporativas:

> **QUINTO: Que los comparecientes de la primera y segunda parte respectivamente, de mutuo acuerdo, libre y voluntariamente han acordado suscribir un contrato de compraventa para la adquisición por parte de Elvin Robles Colón, del cien por ciento (100%) de las acciones corporativas, emitidas y en circulación de RIOS-CARLOS, el cual llevan a efecto bajo las siguientes cláusulas: -------**
>
> **----------------------CLÁUSULAS Y CONDICIONES------------------**
>
> **---UNO: ACCIONES CORPORATIVAS- El presente acuerdo incluye la venta del cien por ciento (100%) de las acciones corporativas emitidas y en circulación de RIOS-CARLOS ENTERPRISE Corp.-----------------------------------------**
>
> **---DOS: TÍTULO- Mediante el presente otorgamiento, LOS VENDEDORES VENDEN, CEDEN, TRASPASAN, Y RENUNCIAN a favor de EL COMPRADOR el negocio en marcha descrito en el párrafo primero anterior, con todos los activos que le corresponden, los cuales Elvin Robles Colón compra y acepta con todos sus usos, derechos, servidumbres, pertenencias y todo en cuanto contiene y le es inherente y sin reserva de clase alguna, libre de deudas, cargas y gravámenes y sin ningún otro acto o ulterior requisito que el otorgamiento del presente contrato de compraventa.-----------------------------------------**
>
> **---El presente acuerdo de compra de acciones corporativas tiene como consecuencia la adquisición por parte de Elvin Robles Colón de todos los activos del negocio conocido como Hotel Mi Tierra operado por RIOS-CARLOS ENTERPRISES CORP., incluyendo, pero sin limitarse a sus derecho de operación, <u>nombre comercial, empleados, equipo, mobiliario, maquinaria, inventario, cartera de clientes, registro de marca, si alguno, licencias, patentes, acuerdos y contratos de representación o distribución existente o en proceso de formalización, secretos de negocio y todo cuanto</u>**

---

[28] *Véase*, SUMAC TPI, Entrada 52, Anejo II, *Contrato de Compraventa de Acciones Corporativas de Rios Carlo Enterprise Corp.*, pág. 2.

**contiene y le es inherente, excepto cualquier excepción que más adelante se detalle**. (Énfasis nuestro y citas omitidas).[29]

De conformidad con lo anterior, las partes también suscribieron el contrato intitulado ***Compraventa de Bienes Muebles* el 9 de abril de 2022,** en el cual los Apelados comparecieron, en representación de la corporación, y el señor Robles Colón, en su carácter personal:

> ---**DE LA PRIMERA PARTE: Elvin Robles Colón, mayor de edad, casado con María Julia Santaella Rodríguez mediante régimen de separación total de bienes conforme escritura número cuatro (4), otorgada en Villalba Puerto Rico el 23 de abril de 2022 ante el Notario Público Liudmila Ortiz Marrero, escritura que se tuvo ante mí, fue evaluada y la misma cumple con todos los requisitos y solemnidades legales para este otorgamiento, se encuentra en pleno efecto y vigor acreditando así la vigencia de las mismas, empresario y vecino de Ponce, Puerto Rico; en adelante denominado LA PARTE COMPRADORA.-----------------------------------------**

> ---**DE LA SEGUNDA PARTE: Verónica Carlos Sánchez y Roberto Oscar Ríos Vargas, ambos mayores de edad, solteros, empresarios y vecinos de Cabo Rojo, Puerto Rico, Roberto Osar Ríos Vargas comparece representado por Roberto Serrano Rivera en virtud de Resolución Corporativa Rios Carlo Enterprises Corp., testimonio número dos mil cuatrocientos veintiocho (2428), otorgada en la Ciudad de Hormigueros, Puerto Rico, a los cuatro (4) días del mes de abril del año dos mil veintidós (2022), ante el notario fedante, por el Secretario de Rios Carlo Enterprises Corp. Roberto Oscar Ríos Vargas, doy fe de que la Resolución Corporativa se tuvo ante mí, fue evaluada y la misma cumple con todos los requisitos y solemnidades legales para este otorgamiento, se encuentran en pleno efecto y vigor acreditando así la capacidad representativa conforme a la Ley, <u>el descrito documento autoriza también la comparecencia de ambos vendedores al presente acto, en adelante denominados ambos como LOS VENDEDORES</u>. --------------------------------**
(Énfasis nuestro y citas omitidas).[30]

Del referido contrato se desprende que el señor Robles Colón adquirió los bienes muebles vendidos por los Apelados, por el precio cierto de cincuenta mil dólares ($50,000.00):

> ---PRIMERO: -Que Los Vendedores son dueños en pleno dominio y en común proindiviso, en participaciones del cincuenta por ciento cada uno para completar el cien por ciento (100%) de equipo mobiliario, maquinaria, inventario para la Operación del Hotel Mi Tierra operado mediante la corporación RIOS-CARLO ENTERPRISES CORP.--------------

---

[29] *Véase*, SUMAC TPI, Entrada 52, Anejo II, *Contrato de Compraventa de Acciones Corporativas de Rios Carlo Enterprise Corp.*, pág. 3-4.
[30] *Véase,* SUMAC TPI, Entrada Núm. 51, Anejo I, *Compraventa de Bienes Muebles,* págs. 1-2.

> ---**SEGUNDO: -Que los comparecientes de la primera y segunda parte respectivamente, de mutuo acuerdo, libre y voluntariamente han acordado suscribir un contrato de compraventa para la adquisición, por parte de Elvin Robles Colón, del cien por ciento (100%) de las participaciones en los bienes muebles, equipo, mobiliario, maquinaria, inventario para la Operación del Hotel Mi Tierra bajo los siguientes:** ------------------------------
>
> ----------------- **CLÁUSULAS Y CONDICIONES** ---------------------
>
> ---**PRIMERO: El valor de la maquinaria, mobiliario y equipo de RIOS-CARLO, neto de depreciación, tiene un valor estimado en CINUCENTA MIL DÓLARES ($50,000.00), sobre cuya base LA COMPRADORA realizó su análisis para la oferta que da lugar a esta transacción; sin embargo, <u>las partes contratantes de mutuo acuerdo han determinado que el precio a pagar por el valor de la maquinaria, equipo y mobiliario del negocio ha de ser garantizado mediante pagaré por la suma de CIENCUENTA MIL DÓLARES ($50,000.00) suscrito por Elvin Robles Colón ante el Notario Carlos E. Ortiz, affidavit 2,893 el día 7 de marzo de 2022.</u>**--------------------
>
> **ACUERDO Y VOLUNTAD**- **<u>El presente documento representa la voluntad de los comparecientes; por lo que estando de acuerdo con lo aquí establecido, proceden a la firma del presente contrato de compraventa de BIENES MUEBLES del negocio en marcha conocido como HOTEL MI TIERRA operado por RIOS-CARLO ENTERPRISES CORP., a favor de EL COMPRADOR</u>**. (Énfasis nuestro y citas omitidas).[31]

Según se adelantó, el pago acordado en el precitado contrato está asegurado por el *Pagaré* suscrito **el 7 de marzo de 2022** por ambas partes. Al respecto, conviene hacer referencia al texto íntegro del *Pagaré* que motivó la radicación de la *Demanda* sobre cobro de dinero:

**PAGAR[É]**

**PRINCIPAL**: $50,000

**VENCIMIENTO:** Dos años a partir de su firma

**POR VALOR RECIBIDO, <u>el suscribiente ("DEUDOR")[32] se obliga a pagar, proporcionalmente, a favor de Roberto Oscar Ríos Vargas y de Verónica Carlo Sánchez, la cantidad de CINCUENTA MIL DOLARES ($50,000.00) en moneda de curso legal de los Estados Unidos de América, en Cabo Rojo, Puerto Rico o en el sitio que designen los tenedores ("TENEDORES"), sin intereses, salvo lo que más adelante se especifica</u>**.

**<u>Esta deuda representa el balance pendiente de pago del DEUDOR a los TENEDORES relacionada al valor del equipo y muebles objeto de la compra del Hotel Mi Tierra</u>**

---

[31] *Véase,* SUMAC TPI, Entrada Núm. 51, Anejo II, *Compraventa de Bienes Muebles,* págs. 2-3.

[32] **Surge del expediente ante nos que, el señor Robles Colón, en su carácter personal, estampó su firma en el *Pagaré,* mediante el cual se le denominó deudor.** Véase, SUMAC TPI, Entrada Núm. 51, Anejo II, *Compraventa de Bienes Muebles,* pág. 2.

**por EL DEUDOR a LOS TENEDORES, cuyo valor fue establecido mediante la tasación ordenada por la Cooperativa de Ahorro y Crédito de Aguadilla para el financiamiento de la transacción de compraventa a favor de EL DEUDOR. Esta cantidad no es a parte de los $800,000 acordados por la compraventa del inmueble**.

La referida deuda no pagará intereses por el término de repago acordado de dos (02) años. contado a partir de su firma. Sin embargo, acumulará intereses mensuales desde su firma a base de una tasa acordada del 3.25% de interés fijo para que en caso de que la misma no sea saldada en su totalidad dentro del periodo acordado, los intereses acumulados se sumarán a la deuda original por la porción no pagada.

En caso de incumplimiento del pago total dentro del término establecido de dos (2) años, EL DEUDOR pagará entonces el principal más los intereses acumulados por la porción no pagada, a base de la tasa antes indicada y continuará pagando principal más intereses a dicha tasa de interés sobre el balance no pagado hasta su total y completo pago.

**EL DEUDOR comenzará a hacer pagos al principal de la deuda a base de mil quinientos dólares ($1,500.00) mensuales, pero tendrá un período de gracia para comenzar a realizar dichos pagos de dos (02) meses o sesenta (60) días. A partir del tercer mes, o día número noventa (90) de la firma de este pagaré, comenzará a realizar los pagos acordados, comprometiéndose a pagar la totalidad de la deuda dentro del período de vencimiento acordado de veinticuatro (24) meses desde su firma: o sea, que pagará mil quinientos dólares mensuales ($1,500.00) por veintiún (21) meses y un (01) último pago por el balance restante para liquidar la deuda, el cual se estima en dieciocho mil quinientos dólares ($18,500.00), aunque EL DEUDOR tiene la opción de hacer abonos mayores a lo acordado o liquidar la deuda antes del periodo de veinticuatro (24) meses pactado**.

Vencida la deuda sin que EL DEUDOR haya satisfecho en su totalidad, LOS TENEDORES del pagaré tendrán la opción de recuperar el equipo y mobiliario objeto de la deuda a fin de disponer del mismo y generar los ingresos para su saldo. Esto, hasta el monto adeudado.

El pago de la deuda se hará mediante transferencia electrónica, cheque de gerente, cheque personal o giro postal o bancario de la cuenta de EL DEUDOR, de modo tal que sen factible evidenciar el pago realizado a cada parte TENEDORA, salvo instrucciones escritas, acordadas y firmadas entre éstos a EL DEUDOR.

**En caso de ser necesaria acción judicial para el cobro de esta obligación, el DEUDOR se somete a la competencia y jurisdicción del Tribunal General de Justicia, Sala Superior de Mayagüez y pagará además a los TENEDORES una suma equivalente a diez por ciento (10%) del balance "face value" o monto original de este pagaré, por vía de indemnización para responder por las costas, gastos y honorarios de abogado, siendo dicha suma líquida y exigible en su totalidad por el mero hecho de la reclamación judicial y aunque los procedimientos se siguieren en rebeldía**.

**El Deudor renuncia a la presentación o requerimiento para el pago de la notificación de no haberse hecho el pago, el protesto y notificación del mismo**.

> **El Deudor renuncia a cualquier término de prescripción en el cobro de este pagaré. El no ejercicio de algún derecho no se interpretará como una renuncia absoluta o impedimento para su ejercicio en el futuro por parte de los TENEDORES**.
>
> **<u>Este pagaré representa el monto reconocido por las partes sobre los equipas y mobiliarios del negocio que LOS TENEDORES venden a EL DEUDOR como parte de la transacción de compraventa del negocio conocido como HOTEL MI TIERRA.</u>**
>
> **<u>La presente obligación se emite conforme a los acuerdos establecidos entre EL DEUDOR y LOS TENEDORES de este pagaré por concepto de la transacción de adquisición entre ellos pactada</u>**.
>
> **En Cabo Rojo, Puerto Rico a 7 de marzo de 2022.** (Énfasis nuestro).[33]

**Nótese que ambas partes, en su carácter personal, suscribieron el referido *Pagaré* para garantizar el cumplimiento del pago concerniente a la *Compraventa de Bienes Muebles* celebrada el 9 de abril de 2022. Por ende, puntualizamos que los Apelados tienen el derecho, en su carácter personal, a requerir el cobro del dinero adeudado. Ello, pues, la obligación contractual incumplida responde al *Pagaré* suscrito a favor de la Parte Apelada, y no a nombre de Rios Carlo Enterprise Corp., entidad que ahora pertenece al señor Robles Colón, como resultado de la compraventa de la totalidad de las acciones.**

Establecido lo anterior, advertimos que, el Apelante aceptó los términos dispuestos en dicho *Pagaré* al estampar su firma e iniciales en este documento. Por tanto, tras el impago de los cincuenta mil dólares ($50,000.00), resolvemos que la Parte Apelada, como tenedora del *Pagaré*, está facultada a reclamar por la vía judicial la suma adeudada, la cual es líquida, vencida y exigible. En efecto, determinamos que el señor Ríos Vargas y la señora Carlo Sánchez han demostrado, al amparo de la prueba documental presentada que: (1) existe una deuda válida, (2) la misma no se ha pagado, (3) los Apelados son los acreedores, y el demandado, aquí Apelante, es

---

[33] *Véase*, SUMAC TPI, Entrada 50, Anejo II, *Pagaré*, págs. 1-2.

el deudor.[34] Véase, *General Electric v. Concessionaires, Inc., supra,* pág. 43-44.

Por tales circunstancias, concluimos que no existe controversia sustancial en cuanto a los hechos materiales aquí discutidos, por lo que, reiteramos que el foro *a quo* procedió conforme a derecho al dictar sentencia sumaria. En virtud de lo anterior, confirmamos el dictamen apelado, pues no reviste prejuicio, parcialidad o error manifiesto en la interpretación o la aplicación de norma jurídica sustantiva o procesal, por parte del foro primario.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* notificada el 27 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[34] *Véase,* SUMAC TPI, Entrada 50, Anejo I y II, *Compraventa de Bienes Muebles* y *Pagaré.*